**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAUL JOSE JIMENEZ-MELENDEZ,<br>　　　　　　　Petitioner,<br><br>　　　v.<br><br>LEONARD ODDO, et. al.,<br>　　　　　　　Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 26-1146 |

**MEMORANDUM OPINION**

Introduction

Pending before the court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) filed on behalf of Raul Jose Jimenez-Melendez ("Jimenez-Melendez"), with attachments. Leonard Oddo, et.al. (collectively, "Respondents") filed a response in opposition, with attachments (ECF No. 6).

Both sides contend that the Immigration and Naturalization Act ("INA") compels a decision in their favor. Jimenez-Melendez, a citizen of Venezuala, asserts that because he has Temporary Protected Status ("TPS"), 8 U.S.C. § 1254a mandates that he shall not be detained or removed from the United States. Respondents argue that because Jimenez-Melendez is subject to a final removal order dated May 11, 2026, 8 U.S.C. § 1231 mandates that he shall be detained.

Factual and procedural history

On January 19, 2021, the last day of his first term, President Trump recognized that Venezuela was experiencing a humanitarian crisis and deferred enforced departure for 18 months. On March 9, 2021, DHS Secretary Mayorkas ("Mayorkas") of President Biden's

administration designated Venezuela for TPS status, for Venezuelans who had been residing in the United States since March 8, 2021.  The 2021 designation was extended twice, providing TPS protection through September 10, 2025.

Jimenez-Melendez entered the United States on September 8, 2022 (ECF No. 6-1 at 2).  He was not admitted or paroled at that time.  *Id.*  He was released into the United States due to a lack of capacity at the processing center in El Paso, TX.  (ECF No. 6-2 at 3).  Jimenez-Melendez asserts that he applied for and received TPS status, at an unspecified date, and he consistently renewed his TPS status since his initial registration (ECF No. 1 at 5).

On October 3, 2023, Mayorkas issued another TPS designation for Venezuela, for Venezuelans who had been residing in the United States since July 31, 2023 (or longer), extending TPS protection through April 2, 2025.[1]

On January 17, 2025 (one of the last days of the Biden administration), Mayorkas determined to extend the 2023 TPS designation for 18 months, through October 2, 2026, and established a consolidated filing process for beneficiaries of the 2021 and 2023 designations.  The extension was set to become effective on April 2, 2025.

On January 28, 2025 (one of the first days of the second Trump administration), DHS Secretary Kristi Noem ("Noem") vacated the January 17, 2025 designation.  On February 5, 2025, Noem terminated the 2023 TPS designation, effective April 7, 2025.  The summary of the Notice provided, in relevant part:

> On October 3, 2023, Venezuela was newly designated for Temporary Protected Status (TPS) based on the determination that there were extraordinary and temporary conditions in that country that prevented the safe return of Venezuelan nationals, and that permitting such Venezuelan nationals to remain temporarily in the United States is not contrary to the U.S. national interest. The 2023 designation of Venezuela for TPS is set to expire on April 2, 2025. After reviewing country

---

[1] Because Jimenez-Melendez has been residing in the United States since September 8, 2022, he would be covered by this second TPS designation.

conditions and considering whether permitting Venezuelan nationals covered by the 2023 designation is contrary to the national interest of the United States, in consultation with the appropriate U.S. Government agencies, the Secretary of Homeland Security has determined that Venezuela no longer continues to meet the conditions for the 2023 designation. In particular, the Secretary has determined it is contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States. The Secretary therefore is terminating the 2023 TPS designation of Venezuela. **This termination is effective April 7, 2025**. After April 7, 2025, nationals of Venezuela (and aliens having no nationality who last habitually resided in Venezuela) who have been granted TPS under the 2023 Venezuela designation **will no longer have TPS**.

Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status, 90 FR 9040-01 (February 5, 2025) (emphasis added).

Jimenez-Melendez submitted an Approval Notice on his individual Application for Temporary Protected Status (ECF No. 1-4) that occurred after the termination of Venezuela's status. The Approval Notice cited a "Received Date" and "Priority Date" of 03/12/2025 and a "Notice Date" of 05/10/2025. The Approval Notice stated it was "Valid from: 05/10/2025 to 10/02/2026" and contained a detachable receipt with the same validity dates. The Approval Notice stated, in relevant part: "While you are under Temporary Protected Status, you: (1) will not be removed from the United States." (ECF No. 1-4).

On April 26, 2025, Respondents issued a Notice to Appear to initiate removal proceedings against Petitioner (ECF No. 6-1). He was charged with removal based upon INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182. *Id.* The Notice to Appear (ECF No. 6-1) provided a hearing date of November 21, 2025. Neither party provided any information about the November 21, 2025 hearing.

On March 12, 2026, Jimenez-Melendez encountered immigration officials. Petitioner asserts he was detained at a traffic stop while he was returning home from work (ECF No. 1 at 5). Respondents assert that immigration officials encountered Jimenez-Melendez in the Henry

County Jail in Georgia on March 12, 2026, subsequent to his arrest on trespassing charges (ECF No. 6-3 at 3).  Respondents did not provide any evidence that Petitioner was convicted of any charges.  The I-213 form reported that Petitioner was removable, but did not acknowledge the Notice of Approval of his TPS status (ECF No. 6-3).  An immigration detainer – Notice of Action was lodged and a hearing is scheduled before an immigration judge on September 28, 2026.  *Id.  But see* ECF No. 6-6 (stating there are no further hearings for this case).

On May 11, 2026, an immigration judge found Petitioner removable/inadmissible "as charged in the Notice to Appear."[2]  The immigration judge entered an order that Jimenez-Melendez "shall be removed to Venezuela."  (ECF No. 6-5).  That order became final when Jimenez-Melendez did not file an appeal by June 10, 2026.  On June 16, 2026, Petitioner filed the pending habeas petition, which did not acknowledge the May 11, 2026 removal order.

Discussion

1.  Positions of the parties

Petitioner argues that the court "need analyze only one statutory provision [§ 1254a] to resolve this habeas petition."  (ECF No. 1 at 9).  Petitioner focuses on §1254a(a)(1)(A), which provides that the government "shall not remove the alien from the United States during the period in which [TPS] status is in effect," and the portion of § 1254a(d)(4) which provides:  "An alien provided temporary protected status under this section shall not be detained by the Attorney General . . . ."  Petitioner argues that pursuant to the plain text of §1254a(a)(1)(A), the TPS protection is valid even if there is a final removal order.

---

[2] It is unclear what "Notice to Appear" was referenced by the immigration judge because the hearing date does not match with any of the notices to appear submitted to the court by either party.

Respondents argue that Venezuela's TPS status was terminated.  Respondents assert that Jimenez-Melendez was ordered to be removed on May 11, 2026, and his detention is mandatory pursuant to § 1231(a)(2)(A), which provides:

> During the [90 day] removal period, the Attorney General **shall detain** the alien. **Under no circumstance** during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2) (emphasis added).  Based upon the May 11, 2026 removal order (ECF No. 6-5), the government asserts that Jimenez-Melendez is within the mandatory 90-day removal period in § 1231(a)(1) and (2).  That order became final on June 10, 2026 (when Jimenez-Melendez did not appeal it) and the 90 days expires on September 8, 2026.  Respondents argue that Petitioner will not be eligible for relief until, at the earliest, December 10, 2026, citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (the Supreme Court established, for the sake of uniform administration, that a 6-month period of detention was presumptively reasonable).

2.    Legal analysis

The parties' arguments are largely two ships passing in the night.  Both sides fail to grapple with the core of the other side's position.  Petitioner fails to address the May 11, 2026 removal order.  Respondents fail to address the Notice of Approval of Petitioner's TSP status through October 2026.  Neither side addresses the implications of Petitioner's arrest in March 2026.

The TPS statute, § 1254a, provides, in relevant part:

(a) (1) In general

In the case of an alien who is a national of a foreign state designated under subsection (b) (or in the case of an alien having no nationality, is a person who last

habitually resided in such designated state) and who meets the requirements of subsection (c), the Attorney General, in accordance with this section—

(A) may grant the alien temporary protected status in the United States **and shall not remove the alien from the United States during the period in which such status is in effect**,

. . .

(b)(2) The designation of a foreign state (or part of such foreign state) under paragraph (1) shall—

(A) take effect upon the date of publication of the designation under such paragraph, or such later date as the Attorney General may specify in the notice published under such paragraph, and

(B) shall remain in effect **until the effective date of the termination of the designation** under paragraph (3)(B).

. . .

(b)(3)(B) Termination of designation

If the Attorney General determines under subparagraph (A) that a foreign state (or part of such foreign state) no longer continues to meet the conditions for designation under paragraph (1), the Attorney General shall terminate the designation by publishing notice in the Federal Register of the determination under this subparagraph (including the basis for the determination). Such termination is effective in accordance with subsection (d)(3), **but shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension under subparagraph (C).**

(b)(5) Review

(A) Designations

**There is no judicial review of any determination of the Attorney General with respect to the** designation, or **termination** or extension of a designation, of a **foreign state** under this subsection.

(B) Application to **individuals**

The Attorney General shall establish an administrative procedure for the review of the denial of benefits to aliens under this subsection. Such procedure **shall not prevent an alien from asserting protection under this section in removal**

**proceedings** if the alien demonstrates that the alien is a national of a state designated under paragraph (1).

. . .

(c)(2)(B) Aliens ineligible

An alien shall not be eligible for temporary protected status under this section if the Attorney General finds that--
(i) the alien has been convicted of any felony or 2 or more misdemeanors committed in the United States, or
(ii) the alien is described in section 1158(b)(2)(A) of this title.
. . .

(d)(3) Effective date of terminations

If the Attorney General terminates the designation of a foreign state (or part of such foreign state) under subsection (b)(3)(B), such **termination shall only apply to documentation and authorization issued or renewed after the effective date** of the publication of notice of the determination under that subsection (or, at the Attorney General's option, after such period after the effective date of the determination as the Attorney General determines to be appropriate in order to provide for an orderly transition).

(4) Detention of alien
An alien provided temporary protected status under this section **shall not be detained by the Attorney General on the basis of the alien's immigration status** in the United States.

8 U.S.C. § 1254a (emphasis added).

On February 5, 2025, Noem terminated the 2023 Venezuela TPS designation, effective April 7, 2025.  The court concludes that it must accept the termination of Venezuela's TPS status.  In *Mullin v. Doe*, No. 25–1083, 2026 WL 1825840 (U.S. June 25, 2026) (involving the termination of TPS status for Syria and Haiti), the Supreme Court concluded that courts are barred by statute from reviewing non-constitutional claims arising from TPS terminations. The Court explained:

A provision of the TPS statute, 8 U.S.C. § 1254a(b)(5)(A), provides: "There is no judicial review of any determination of the [Secretary of Homeland Security] with

7

respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." This text is clear, and its plain meaning is very broad. *Id.* at \*7. The clear statutory language reflected Congress' intent to overcome the presumption of judicial review. The Court commented that "Congress would have ample means to stop [potential shocking abuses of the TPS statute by rogue DHS secretaries], including, for example, through the annual appropriations process." *Id*. at \*10.

The court is not convinced by Petitioner's citation to a December 10, 2025 order in *National TPS Alliance v. Noem*, No. 25-cv-01766, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025) ("*NTPSA*") (declaring that the vacatur of the January 17, 2025, TPS extension and termination of Venezuela's 2023 TPS designation on February 5, 2025 were unlawful).[3] In addition to being difficult to reconcile with *Mullin, NTPSA* is not persuasive because it is stayed. *See Guache v. Otto*, No. 26-459 (ECF No. 9) ("to the extent that Petitioners rely on the decision of the Northern District of California in *Nat'l TPS All v. Noem*, 25-cv-1766- EMC (N.D. Cal.), for the proposition that former Secretary Noem's decision to reverse her predecessor's extension of TPS status for citizens of Venezuela, that Court's decision has been stayed by the Supreme Court."). In addition, Jimenez-Melendez did not present evidence he was a party to the *NTPSA* litigation, and therefore is not entitled to the benefit of the declaratory judgment that litigation. *See Herrera v. Noem*, 825 F. Supp. 3d 1025, 1032 (D. Ariz. 2026); *Bello Oropeza v. Noem*, No. CV-26-01251-PHX, 2026 WL 1597192, at \*8 n.6 (D. Ariz. May 21, 2026) (distinguishing *Herrera* on that basis); *United States v. Mendoza*, 464 U.S. 154, 162 (1984) (holding that "nonmutual

---

[3] The United States Court of Appeals affirmed the grant of summary judgment in favor of the petitioners in *NTPSA*, 166 F.4th 739 (9th Cir. 2026). Respondents filed a petition for certiorari on July 9, 2026. https://www.supremecourt.gov/DocketPDF/26/26-48/416072/20260709130950638_NTPSA_Petition_Final.pdf. The *NTPSA* decision is stayed through disposition of the cert petition. https://www.supremecourt.gov/opinions/24pdf/25a326_3ebh.pdf.

offensive collateral estoppel simply does not apply against the government"). The court must decide this case based upon the record developed here.

The termination of Venezuela's TPS status does not necessarily resolve this case. *See, e.g.*, § 1254a(b)(5)(A) and (B) (distinguishing TPS designations of foreign states from application to individuals). Jimenez-Melendez provided the court with an Approval Notice showing that his individual TPS protection was extended until October 2026. The Approval Notice (ECF No. 1-4) reflects a "Received Date" of March 12, 2025 (after Noem's February 5, 2025 termination notice) and validity dates from May 10, 2025 through October 2, 2026 (beyond the April 7, 2025 effective TPS termination date).

It appears that Petitioner filed an application to continue his individual TPS protection despite Noem's announcement about Venezuela. Respondents did not inform Jimenez-Melendez that his TPS protections had been revoked. Instead, they approved the extension of his TPS protections until October 2026 (ECF No. 1-4).

Respondents provided no evidence that Jimenez-Melendez became ineligible for TPS status, for example by being convicted of a felony or two misdemeanors. *See* § 1254a(c)(2)(B). The removal order relied upon by Respondents (ECF No. 6-5) does not acknowledge or address Jimenez-Melendez's TPS status. In sum, on this record, it appears that Respondents approved Petitioner's TPS protection through October 2026.

The relief to be granted is problematic and was not addressed in detail by the parties. It is the court's understanding that Petitioner is detained and is facing a hearing related to the encounter with immigration officials on March 12, 2026, which may affect his eligibility for TPS status. That hearing is currently scheduled for September 8, 2026 (ECF No. 6-3 at 4).

The court concludes that additional evidence and briefing is necessary to resolve this matter.  On or before August 13, 2026, the parties shall file the pertinent documents referenced below:

- All documents relating to Petitioner's applications and renewals of TPS status;

- The transcript of the hearing that resulted in the Removal Order dated May 11, 2026 (ECF No. 6-5), and the corresponding Notice to Appear;

- The transcript and status of the hearing set for November 21, 2025 (*see* ECF No. 6-1); and

- The status of the hearing set for September 8, 2026 (*see* ECF No. 6-4).

On or before August 13, 2026, the parties shall file supplemental briefs which address the following issues:

1. The date the Approval Notice (ECF No. 1-4) was issued and the effect of that Approval Notice on this case;

2. The status of the criminal charges referenced in ECF No. 6-3, and the impact, if any, on the applicable legal analysis;

3. Any legal authorities with respect to reconciling the apparently contradictory statutory commands in § 1254a and § 1231; and

4. The appropriate relief, if any, to be awarded.

The above list is without prejudice to the parties' ability to address other matters which they believe may be necessary to the resolution of this case.

<u>Conclusion</u>

For the reasons set forth above, the Petition for Writ of Habeas Corpus (ECF No. 1), will

be TAKEN UNDER ADVISEMENT pending review of the supplemental materials and

additional briefing to be provided by the parties.

An appropriate Order will be entered.


Dated:  July 23, 2026                                BY THE COURT:

                                                     <u>/s/ Joy Flowers Conti</u>
                                                     Joy Flowers Conti
                                                     Senior United States District Court Judge